UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JEREMY K. GILLIS** | : | **CIVIL ACTION NO. 2:11-cv-2211** |
| | : | **SECTION P** |
| **VERSUS** | | |
| | : | **JUDGE MINALDI** |
| **TRAVIS SKINNER, ET AL** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Plaintiff Jeremy K. Gillis, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on December 21, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at Allen Correctional Center (ACC) in Kinder, Louisiana and complains of events that occurred at that facility. Plaintiff names as defendants the following: ACC Officer Travis Skinner, ACC Chaplin Vertis March, and Wayne Calabrese, CEO of Global Expertise in Outsourcing Group, Inc. (GEO). Plaintiff prays that this court sanction and remove Major T. Skinner from ACC, that he and other inmates receive compensatory damages, that the court ensure that he is not transferred from ACC, and that there not be any retaliation against him.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE.**

*Statement of the Case*

Plaintiff contends that defendant Skinner targets homosexual inmates and denies them their right to attend church services. Plaintiff states that on August 26, 2011, he and several other inmates were sitting in the ACC auxiliary kitchen where the church is held waiting for the service to begin. Defendant Skinner entered the area and ordered plaintiff and five other inmates to leave the service. Plaintiff claims that this occurred on two previous occasions, namely August 17, 2011, and August 23, 2011.

After the incident on August 26, 2011, plaintiff submitted an administrative remedies procedure grievance concerning his removal from the church area by Skinner. The first step response stated that plaintiff was "in the back of the auxiliary kitchen causing a disturbance in church and was told to exit the church service. Offender was removed for security reasons." Doc. 1, Att. 2, p. 1. The second step response reiterates the findings of the first step response. Doc. 1, Att. 2, p. 2.

*Law and Analysis*

A. **Frivolity Review:**

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Under 28 U.S.C. § 1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous, malicious, or fails to state a claim on which relief may be granted. *See Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Independent School*

*District*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1996) (frivolous); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

    **B.  Section 1983:**

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, the initial question is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim that would entitle plaintiff to relief. In order to hold the defendants liable, plaintiff must allege facts to show: (1) a constitutional right has been violated, and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

The court is convinced that plaintiff has presented the best case which could be presented under the circumstances. Further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated herein, that the complaint fails to state a claim upon which relief may be granted and is frivolous as a matter of law. Therefore, the complaint should be dismissed with prejudice.

    **1.  Equal Protection Claim:**

Plaintiff states that the defendants discriminated against him because of his sexual orientation. This claim implicates Equal Protection Clause of the Fourteenth Amendment.

To state an equal protection claim plaintiff must allege a state actor discriminated against him intentionally because he was a member of a protected class. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Sexual orientation is not recognized as a suspect class; nevertheless, to the extent that certain actions disadvantage homosexuals, the conduct complained of must be rationally related to legitimate government aims. *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004).

The record does not reflect that plaintiff was asked to leave church services because of his sexual orientation. Rather, it shows that the denial was due to his disruptive behavior while in attendance. His preclusion served the rational and legitimate penological interest in maintaining security and order in the prison. *See Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990). Thus, plaintiff has failed to state a claim for relief on equal protection grounds.

**2.  Free Exercise of Religion Claim:**

Plaintiff claims that his right to practice his faith was curtailed by defendants' actions described above in violation of his rights guaranteed by the First Amendment to the Constitution.

Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. However, the judiciary is to accord deference to the decisions of prison administrators in recognition of the complexities and difficulties in managing a penal institution. *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977). As the Supreme Court directs:

> Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's "status as a prisoner" and the operational realities of a prison dictate restrictions on the associational rights among inmates.

*Id.* at 125-26.  Ultimately, in determining whether a practice or policy violates a prisoner's right to free exercise of religion, the court must assess whether the practice or policy "is reasonably related to legitimate penological interests."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

The Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), established a four factor test for analyzing the constitutionality of regulations or practices that burden the fundamental rights of prisoners.  Courts are to consider the following:

> (1) Whether a "valid rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it,"
>
> (2) Whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates,"
>
> (3) What "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and
>
> (4) Whether there is an "absence of ready alternatives" to the regulation in question.

*Id.* at 89-90.  Each factor need not be considered and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir. 1992).

The first *Turner* factor directs the court consider the relationship between the actions of the prison and the reasons behind that action.  As previously discussed, the administrative review panel found that plaintiff was removed from prison services because he was causing a disturbance during the services which jeopardized the security of the prison.  Doc. 1, Att. 2, pp. 1-2.  The court finds that there is a clear rational basis between the removal of disruptive prisoners from church services and the need for prison safety.  In any event, plaintiff has failed to

identify any evidence—beyond a mere accusation—that defendant directed homosexual inmates to leave church services specifically because of their homosexuality.

With respect to the second, third, and fourth *Turner* factors, there is no indication that plaintiff was not afforded the *opportunity* to attend church services. The court need not consider whether "alternative means" exist—plaintiff was free to exercise his religion in a manner of his choosing on the condition that he behaved. Moreover, prisons need not accommodate disruptive behavior or allocate additional resources to police such behavior. As such, the court puts the emphasis in this case on the first *Turner* factor—that is, there is a clear rational basis between the legitimate penological interest in maintaining prison security and asking disruptive churchgoers to exit the services.

Plaintiff has failed to state a claim for relief on free exercise grounds.

### C. Monetary Relief:

Even if plaintiff could state a cause of action under the First or Fourteenth Amendment, he still is not entitled to compensatory damages because he fails to allege a "physical injury."

The Prison Litigation and Reform Act of 1996 bars the recovery of monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." *Crawford-el v. Britton*, 523 U.S. 574, 596 (1998). The "physical injury" standard requires more than a *de minimis* showing of injury, but the injury need not be significant. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir.1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir.1997). Plaintiff has not alleged a physical injury in this case, and as such, his claim for relief is without merit.

### D. Sanctioning & Removal of Defendant Skinner:

Plaintiff further requests that this court sanction defendant Skinner and remove him from his position of employment.

The court lacks the authority to grant this relief. Even if it had authority plaintiff fails to identify any legal authority recognizing that the judiciary has the power to direct the employment decisions at state prisons. As such, this claim is without merit.

### E. Injunctive Relief:

In addition to compensatory damages, the plaintiff asks that this court enjoin his transfer from ACC. Plaintiff is not entitled to this relief.

It is well settled that prisoners do not have a constitutional right to be incarcerated in any particular institution. *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Decisions regarding the placement of prisoners and whether to transfer a prisoner are essential to prison management. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). These decisions are left to the discretion of prison officials and are not subject to judicial oversight as long as the conditions of confinement to which plaintiff is subjected do not otherwise violate the Constitution. *Shaw v. Murphy*, 532 U.S. 223, 228 (2001).

### F. Supervisory Liability:

Even in the event plaintiff had stated a cause of action in his civil rights claim, he has not stated a cognizable claim against Wayne Calabrese or Chaplin March. These claims are not cognizable as it is well settled that supervisory officials may not be held liable under section 1983 under the doctrine of *respondeat superior*. *Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992).

In order to be liable under section 1983, supervisory officials must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Plaintiff fails to set forth a constitutional claim against these

parties. There are no allegations that they were personally implicated in any alleged constitutional deprivation or that they implemented any policy which acts as a constitutional deprivation. Thus, these claims should also be dismissed for failure to state a claim upon which relief may be granted.

## *Conclusion*

Accordingly, **IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429-30 (5th Cir. 1996).

THUS DONE this 24th day of February, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE